[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

## Case No. 15,095.

UNITED STATES v. FIFTY-SIX BARRELS OF WHISKEY.

[1 Abb. U. S. 93; [1] 6 Am. Law Reg. (N. S.) 32; 4 Int. Rev. Rec. 106.]

District Court, D. Kentucky. July Term, 1866.

INTERNAL REVENUE — FORFEITURES — INNOCENT PURCHASER—ADMIXTURE.

1. A bona fide purchaser of personal property, which has been forfeited to the government by previous acts of the former owner, is not protected against the title of the government. The right of the government founded on the forfeiture must prevail over any title acquired by purchase subsequent to the forfeiture.

[Cited in U. S. v. Seventy-Six Thousand One Hundred and Twenty-Five Cigars, 18 Fed. 150.]

2. The general rule in respect to the time when a forfeiture takes effect, is, that when a statute denounces a forfeiture of property as the punishment of a violation of law, if the denunciation is expressed in direct terms and not in the alternative, the forfeiture takes place at the time when the offense is committed, and operates at that time as a statutory transfer of the right of property to the government.

[Cited in U. S. v. Sixty-Four Barrels Distilled Spirits, Case No. 16,306; U. S. v. One Copper Still, Id. 15,928; Heidritter v. Elizabeth Oil-Cloth Co., 6 Fed. 141.]

3. No distinction exists, in this respect, between the operation of a statute which declares that, for a specified offense, the property designated shall be forfeited, and one which declares that the offender shall forfeit the property.

4. Where one who has purchased property,—such as spirits,—which had been previously forfeited to the government, has mixed it (although in good faith) with other property free from forfeiture, so that it can no longer be identified, the courts, in enforcing the forfeiture, can not make any division of the aggregate between the claimant and the government. All the forfeited property must be delivered to the government; and if this, by reason of the admixture, necessitates the delivery of the other, the claimant must bear the loss.

Trial of an information.

This was an information filed against fifty-six barrels of whiskey, and certain stills and other vessels, for a violation of section 68 of the internal revenue act of 1864 [13 Stat. 248]. The information contained two counts. The first count alleged, in substance, that one William E. Reed was the owner of the stills and other vessels in question, and used the same in the distillation of spirits continuously from September, 1865, until the seizure, and that he had used said stills and vessels in the distillation of the fifty-six barrels of whiskey seized; but he did not, from day to day, make, or cause to be made, in a book kept for that purpose, a true and exact entry of the number of gallons so distilled, or of the number sold or removed for consumption or sale. The second count alleged that Reed did not render to the assessor, or to the assistant assessor, on the 1st, 11th, and 21st days of each and every month, or within five days thereafter, or on

---

[1] [Reprinted by Benjamin Vaughn Abbott, Esq., and here reprinted by permission.]

the first day of each month, an account in duplicate, taken from his books, of the number of gallons of spirits distilled, or the number sold or removed for consumption or sale. Twenty-two of the barrels seized were claimed by William H. Walker & Co., three were claimed by Gheens & Co., and the remaining thirty-one, together with the stills and other vessels, not having been claimed by any one, were condemned by default. The claimants filed separate answers, but the defense of each was substantially the same. Both denied every substantial allegation contained in the information, and both alleged that they purchased the whiskey claimed by them respectively before the seizure, bona fide, and that they paid for the same a full and fair consideration, without any knowledge or suspicion of the alleged forfeiture, or cause of forfeiture. They also both alleged, substantially, that the whiskey was, at the time of the purchase, regularly and legally branded by plaintiffs' inspector. The case was, by agreement of parties, submitted to the court upon the law and facts, a jury being waived.

B. H. Bristow, Dist. Atty., for the Government.

John W. Barr and Martin Bijur, for claimants.

BALLARD, District Judge. I shall neither state nor discuss the facts proven. My conclusion in respect to these is, that every substantial allegation of the information is true, and that no part of the matter set up in the answers, in support of the claims, is sustained by the evidence, except: (1) That the barrels of whiskey purchased by the claimants had been regularly branded by the United States inspector prior to the purchase. (2) That the claimants are bona fide purchasers, without any notice of, or cause to suspect, the alleged forfeiture.

These facts present the following questions for my decision, to wit: First. Does the information set forth a good cause of forfeiture? Second. Have the claimants supported their claims?—that is, do the facts alleged and proven by them constitute any reason why the forfeiture should not be enforced?

Sections 57 and 68 of the internal revenue act furnish a complete answer to the first question. Section 57 makes it the duty of "every person who shall be the owner of any still, boiler, or other vessel used * * * for the purpose of distilling spirituous liquors * * * and of every person who shall use any still, boiler, or other vessel as aforesaid, either as owner, agent, or otherwise, from day to day, to make a true and exact entry, or cause to be entered in a book kept for that purpose, the number of gallons of spirits distilled * * * and also the number sold or removed for consumption or sale."

The first count, we have seen, alleges a neglect of the duty here enjoined. This section also provides, that every such person,

if he distill one hundred and fifty barrels of spirits per year, or more, shall render the assessor, or assistant assessor, on the 1st, 11th, and 21st days of each and every month in each year, or within five days thereafter, an account in duplicate, taken from his books, of the number of gallons of spirits distilled, and also the number of gallons sold or removed for consumption or sale, and that he shall pay the taxes on such spirits at the time of rendering the duplicate account thereof. If he distill less than one hundred and fifty barrels per year, he may make his returns and pay duties on the first day of every month.

The second count of the information avers a neglect of this duty. Section 68 provides "That the owner, agent, or superintendent of any * * * still, boiler, or other vessels used in the distillation of spirits, on which a duty is payable, who shall neglect or refuse to make true and exact entry of the same, or to do, or cause to be done, any of the things by law required to be done as aforesaid, shall forfeit, for every such neglect or refusal, all the * * * spirits made by or for him * * * and the stills, boilers, and other vessels used in distillation, together with the sum of five hundred dollars * * * which said spirits, with the vessels containing the same, with all the vessels used in making the same, may be seized by any collector or deputy collector of internal duties, and held by him until a decision shall be had thereon, according to law. * * * And the proceeding to enforce said forfeiture of said property shall be in the nature of a proceeding in rem." It is manifest that the information does, in apt form and in apt language, set forth neglects of duty for which a forfeiture is denounced by the express terms of this section. This is conceded by the learned counsel of the claimants. They admit that the property seized must be condemned as forfeited if the facts established by the claimants are not sufficient to show that, as to the property claimed by them, there never was any forfeiture.

In respect to the first fact established by the claimants, that is, that the barrels were regularly branded by the United States inspector before they purchased, it is clear that it furnishes no answer to any thing alleged in the information. Besides the duties which are enjoined by section 57, the neglect of which is alleged in the information, section 59 requires, "That all spirits distilled as aforesaid by any person licensed as aforesaid shall, before the same are used or removed for any purpose, be inspected, gauged, and proved by some inspector appointed for the performance of such duties." If the information had alleged a removal of the spirits distilled before inspection, the fact that the barrels were branded before removal would have been material. It, however, not only furnishes no answer to the charges set out in the information, that

no entry was made from day to day, in a book kept for that purpose, of the number of gallons of spirits distilled, or the number removed for consumption or sale, and that no return was made to the assessor, such as is required by law, but it has not the slightest relation to either of them. This is conceded by the claimants. They do not rely on this fact as precluding a condemnation. They treat it simply as one of the facts which show that the claimants acted in good faith and are bona fide purchasers; and, as I have already announced that I am satisfied, upon the whole case, that the claimants are such purchasers, it is wholly immaterial for me to state what influence I have given to this single fact in arriving at the more general conclusion of the good faith of the claimants. If the barrels had not been branded by an inspector this would have been a most material fact, if an effort had been made to show bad faith; but no such effort has been made. That the claimants were innocent purchasers is established; and is not, in fact, contested by the United States, and, therefore, the fact of the barrels being branded is entitled to no consideration whatever.

This brings me to the consideration of the main question in the case: Does the fact that the claimants purchased the whiskey claimed by them bona fide, and without any knowledge or suspicion of the alleged cause of forfeiture, preclude a judgment of condemnation? This is a very important question, whether it be considered in reference to the citizen or to the government. It has been argued before me with great ability, and I have bestowed upon it much reflection. The general law of property is, that the true owner may recover it of any one who has it in possession, no matter whether the possessor be a bona fide purchaser or not. The law which protects bona fide holders of bills of exchange and other negotiable paper has no relation to property generally. Every purchaser of merchandise or other property risks, in a certain sense, the title of his vendor, and, if it turns out that his vendor has no title and the property be recovered of him, he has no remedy except on the warranty of the vendor. It follows that, if when Walker & Co. and Gheens & Co. purchased the whiskey claimed by them their vendor had no title—that is, if it had already been forfeited to the United States, the fact that they are bona fide purchasers cannot avail them. Their good faith cannot oust the claim of the true owner. They are exactly in the condition of every bona fide purchaser of property whose title fails and who is therefore obliged to surrender it to the owner. They must look to the warranty of their vendor.

Indeed, I have difficulty in perceiving that the bona fides of the purchase is at all material, or that it has any relation to the grounds of forfeiture alleged in the information. If the forfeiture took place prior to their purchase, it is undisputed and indisputable that the right of property was immediately transferred to the United States, and that the right of the latter must prevail over that of the purchaser, notwithstanding the purchase was made in good faith. The right of the United States in such case depends not at all on the conduct of the purchaser, but upon their own superior title, resulting from a forfeiture which took place prior to any inception of right in the purchaser. If there was no forfeiture prior to the acquisition of right by the claimants, whether the right was acquired by purchase for a valuable consideration or by gift, I am at a loss to conceive how there was any forfeiture at all. I cannot see how property, whether acquired by gift or purchase, can be condemned as forfeited for the offense of its former owner, which was not already forfeited at the time of the gift or purchase. If the acquisition be by pretended gift or pretended purchase, in such sense that the title is not changed, but really remains in the first owner, then, of course, his offense committed after the pretended gift or sale may work a forfeiture. But neither the internal revenue act nor any other act of congress forfeits property for the crime of a person which does not belong to him, or is not managed by him at the time of the forfeiture. Property is sometimes forfeited in consequence of the act of some person who manages or controls it other than the owner; but the forfeiture does not extend to property previously managed or controlled, and which, before being contaminated with the offense, is sold or otherwise parted with in good faith.

The question then comes to this: When does the forfeiture denounced by section 68 take place? Does it take place at the time the offense is committed, or at some subsequent time? The decisions are uniform, both in England and the United States, that when a statute denounces a forfeiture of property as the penalty for the commission of crime, if the denunciation is in direct terms, and not in the alternative, the forfeiture takes place at the time the offense is committed, and operates as a statutory transfer of the right of property to the government. Robert v. Witherhead, 12 Mod. 92; 1 Salk. 223; Wilkins v. Despard, 5 Term R. 112; U. S. v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch, [12 U. S.] 398; The Mars, Id. 417; Gelston v. Hoyt, 3 Wheat. [16 U. S.] 311; Wood v. U. S., 16 Pet. [41 U. S.] 362; Caldwell v. U. S., 8 How. [49 U. S.] 381.

The case of United States v. Nineteen Hundred and Sixty Bags of Coffee arose under section 5 of the nonintercourse act of March, 1809 (2 Stat. 529), which provides: "That whenever any article * * * the importation of which is prohibited by this act, shall after May 20, be imported into the United States * * * or be put on board of any ship or vessel, boat, raft, or carriage, with intention of importing the same into the United States * * * all such articles, as well

as all other articles on board of the same ship or vessel, boat, raft, or carriage belonging to the owner of such prohibited article, shall be forfeited, and the owner shall, moreover, forfeit and pay treble the value of such articles." The claimants made precisely the same plea which Walker & Co. and Gheens & Co. make in this case; that is, they alleged that they were bona fide purchasers for a valuable consideration. The case was most ably and elaborately argued; but the supreme court overruled the plea, and held that by the terms of the statute the forfeiture took place upon the commission of the offense, and the purchaser was not protected. It will be perceived that this statute does not fix the time at which the forfeiture is to take place in more explicit terms than does the statute under which the present case arises. The one declares that whenever any article shall be imported it shall be forfeited, and that the owner shall forfeit other property; and the other declares that the owner, agent, or superintendent, &c. * * * who shall neglect to make true and exact entry and report, or to do any of the things required by law, shall forfeit, &c. If the forfeiture under the act of 1809 takes place at the time of the commission of the offense, so as to override the title of all subsequent purchasers, and this, we have seen, the supreme court have expressly decided, I can conceive of no argument which would not refer the forfeiture under the act of 1864 to the same time, or which would not invest the forfeiture with the same consequences.

The case of Gelston v. Hoyt, 3 Wheat. [16 U. S.] 311, involved a construction of the neutrality act of 1794 (1 Stat. 383), the third section of which declares a forfeiture of vessels fitted out and armed to be employed in the service of a foreign state in committing hostilities against the citizens, subjects, or property of another foreign state with whom the United States are at peace. The court say "the forfeiture must be deemed to attach at the moment of the commission of the offense, and consequently from that moment the title of the plaintiff would be completely divested, so that he could maintain no action for the subsequent seizure. This is the doctrine of the English courts, and it has been recognized and enforced in this court upon very solemn argument."

The case of Caldwell v. U. S. involved, in part, the construction of sections 66 and 68 of the collection act of 1799 (1 Stat. 677), the latter of which declares a forfeiture in the alternative, that is, of the goods or their value, and the former declares it without any alternative. The inferior court had instructed the jury, "that if the goods were fraudulently entered, it is no matter in whose possession they were when seized, or whether the United States had made an election between the penalties, and that the forfeiture took place when the fraud, if any, was committed, and the seller of the goods could convey no title of the goods to the purchaser." The supreme court say: "This instruction is partly right and partly wrong—right in respect to section 68, as the penalty is a forfeiture of the goods without an alternative of their value; wrong, as the instruction applies to section 66, the forfeiture under it being 'either the goods or their value.' In the first, the forfeiture is the statutory transfer of right to the goods at the time the offense is committed. If this was not so, the transgressor, against whom, of course, the penalty is directed, would often escape punishment, and triumph in the cleverness of his contrivance by which he has violated the law. The title of the United States to the goods forfeited is not consummated until after judicial condemnation, but the right to them relates backwards to the time the offense was committed, so as to avoid all intermediate sales of them between the commission of the offense and the condemnation. So this court said in the case of U. S. v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch [12 U. S.] 398. It was said again in the case of U. S. v. The Mars, Id. 417; declared again, four years afterwards, in Gelston v. Hoyt, 3 Wheat. [16 U. S.] 311, in these words: 'The forfeiture must be deemed to attach at the moment the offense is committed, so as to avoid all sales afterwards.' "

There is, we have seen, no alternative in section 68 of the internal revenue act of 1864. The forfeiture of the spirits, stills, boilers, and other vessels used in distillation, is by it directly declared. Its construction is, therefore, fixed by the decisions to which I have referred, almost as certainly and conclusively as if its provisions had been the direct subject of adjudication. The conclusion to my mind, then, is irresistible, that the forfeiture denounced by this section, to use the language of the supreme court, "takes place at the time of the commission of the offense, so as to avoid all sales afterwards."

It is just to the learned counsel of the claimants to say, that they concede this would be the correct construction of the section if it had, in so many words, declared that the spirits, &c., should be forfeited. They say that the statute does not declare that the spirits, &c., shall be forfeited, but that the owner, agent, or superintendent shall forfeit them, and that this difference of language requires a difference of construction. Their argument is extremely refined, and is difficult to state. If I understood them, they contend that there is a difference between the construction of a statute which denounces a forfeiture of specific property as the penalty of an offense, and one which declares that the offender shall forfeit it. In the first case they concede that the forfeiture takes place at the time of the commission of the offense, whilst in the latter they insist it does not take place until seizure, conviction, or judgment. No adjudged case or other authority has been cited in support of this distinction, and I am unable to conceive any good reason

for upholding it. What ground is there for referring the forfeiture to the time of seizure? There must have been a previous forfeiture to authorize a seizure. The seizure is the consequence of the forfeiture, not the cause. Nor do I see any reason for referring the forfeiture to the time of conviction or judgment. The conviction and the judgment are simply the consummation of the proceeding that the law requires to be instituted to ascertain the fact or forfeiture of which the seizure is the beginning.

If the statute made the forfeiture the consequence of the personal conviction of the offender, in which case there is no seizure, or if it even required a personal trial and conviction to precede judgment of forfeiture, there might be some force in the argument of the learned counsel founded on forfeitures at common law in cases of treason and felony. I admit that, at common law, there was no forfeiture of the goods and chattels of a felon until he was convicted; but under that law, no penalty whatever could be inflicted for the crime of felony except in cases of suicide, flight, and perhaps a few other analogous cases, until after the personal conviction of the offender, and in the excepted cases the forfeiture related to the time of the offense. When the felon was convicted, death was the penalty, and judgment of death followed. A forfeiture of goods and chattels was a consequence of the conviction, and a forfeiture of real estate a consequence of the judgment; but forfeiture was no part of the judgment. Here, however, we are not trying the offender at all, or if at all, only incidentally. He is not personally before the court, and cannot in this proceeding be convicted. The statutes under which we are proceeding do not make the forfeiture the consequence of his conviction, but of his offense, which offense it authorizes to be inquired into by a seizure of, and a proceeding against, the property itself. Having ascertained that offenses were committed, I cannot in this proceeding render any judgment against the offender; I can only render a judgment of condemnation of property, which judgment is merely the judicial ascertainment of the fact that the property was previously forfeited.

When a statute declares that an offender shall forfeit property as the penalty of his offense, and authorizes a proceeding in rem to ascertain the forfeiture, I am satisfied that the forfeiture takes place at the time of the commission of the offense just as certainly as it does when the statute directs, not that the offender shall forfeit, but that the property itself shall be forfeited. There is a difference between common law and statutory forfeitures. Common law forfeitures, except in cases of deodand, suicide, flight, and perhaps a few others, were the consequence of conviction, or of judgment against the felon, and followed his personal trial; but statutory forfeitures are usually enforced by proceeding against the thing, and relate to the time of the commission of the offense. This distinction is recognized by the supreme court in the case of U. S. v. Grundy, 3 Cranch [7 U. S.] 337, and other cases. They say: "When the forfeiture is given by statute, the rules of the common law may be dispensed with, and the thing forfeited may either vest immediately or on the performance of some particular act, as shall be the will of the legislature." When there is no alternative in the statute, when it directly declares a forfeiture, and no time subsequent to the committing of the crime is named at which the forfeiture is to take effect, the settled rule, we have seen, is, that it relates to the time of the commission of the offense.

Whether the statute declares a forfeiture of property as the consequence of crime, or that the person who committed the crime shall forfeit it, the effect is the same. In either case the immediate loss falls on the owner. Whether the forfeiture is in consequence of his own unlawful act, or of the unlawful act of some other person, respecting the thing forfeited, the loss is still his, and his only. It is he who in fact forfeits or loses, no matter in what language the forfeiture is declared. By the terms of the statute we are now considering, the agent or superintendent who uses stills, boilers, or other vessels in the distillation of spirits, and who neglects to do the things enjoined by law, forfeits as well as the owner. But the agent is not owner, and literally he cannot forfeit what he does not own. He may cause its forfeiture by his unlawful act, but he cannot lose what is not his. Therefore, when the statute declares that the agent or superintendent shall forfeit the stills, boilers, and other vessels, it must be understood to mean that these articles shall be forfeited in consequence of his neglect of duty. And if this be its meaning, even the learned counsel of the claimants would concede, that the consequence and effect of the forfeiture are that the title to the thing forfeited passes instantly upon the commission of the offense.

I observe that the learned judge of the Eastern district of Missouri treats section 68 as if it read, that the owner of the spirits shall forfeit them. And on this reasoning he seems to have founded his conclusion that the owner does not forfeit what he sells before seizure. He says: "That as 'the owner,' &c., shall forfeit, and not the purchaser, the owner can forfeit only what belongs to him." It may be conceded that the owner can forfeit only what belongs to him, but I do not see that this helps the argument; for if the forfeiture takes place, as I have shown it does, at the time the offense is committed, it is not necessary to claim that he forfeits more than what then belongs to him. If he forfeits that, the title of the United States immediately takes effect and prevails over that of all purchasers. U. S. v Three Hundred and Ninety-Six Barrels [Case No. 16,503]. An attentive examination of the section, however,

will show that, by its terms, it is not the owner of the spirits, but the owner, agent, or superintendent of the stills, boilers, or other vessels in the distillation of spirits, who forfeits. It is the neglect to perform a prescribed duty by any one who uses stills, boilers, or other vessels in the distillation of spirits, whether as owner, or simply as agent or superintendent, which produces the forfeiture; and what are forfeited are the stills, boilers, and other vessels and spirits made by or for him. If the agent forfeits only what "belongs to him," he forfeits nothing, for the stills, boilers, and other vessels and spirits do not belong to him. They belong to the principal. But the statute says the agent who neglects, &c., shall forfeit these things, and there are no means of escaping a provision so express. The statute, then, must mean that these things shall be forfeited for the agent's neglect, or as to him it is inoperative, and has no meaning at all. And if they are forfeited for his neglect, surely the forfeiture takes effect the moment of neglect. There is no other period to which it can possibly be referred.

I have great respect for the opinions of the learned judge who decided the case of U. S. v. Three Hundred and Ninety-Six Barrels, above referred to. I have not ventured to differ from him until after the fullest consideration and the clearest conviction. I cannot but think his decision is based on a misreading of the statute, as well as on a misconception of adjudged cases. The conclusion to which I have arrived is, I think, sustained by an opinion of the learned judge of the Southern district of Ohio, in the case of U. S. v. Sixteen Hogsheads of Tobacco [Case No. 16,302], and by the uniform decisions of the supreme court of the United States; and I have not a doubt of its correctness.

I need not say that I have arrived at my conclusion reluctantly. I have examined every provision of the statute; I have attentively considered section 180, and every section which declares a forfeiture, and I think that the provisions of each and all of them confirm the construction of section 68 which is here adopted. It would be a much more pleasing task for me to order a restoration of the property seized to the innocent claimants than to adjudge its condemnation, if I could do so consistently with my sense of duty. I have been literally forced to a decision in spite of my personal inclination by a current of authorities which is irresistible. Judgment of condemnation must be entered.

The counsel of Walker & Co., however, ask that the judgment be limited to nineteen of the barrels claimed by them, and that the other three seized in their possession be restored. This motion is based on the following state of facts: The twenty-two barrels of spirits claimed by Walker & Co. are part of a lot of thirty-seven barrels purchased at the same time. Only thirty-two of the barrels were distilled by William E. Reed, mentioned in the information. Five were distilled by some one else; and as to them, there is neither proof nor allegation that there was any violation of law. If these five barrels remained and could be identified as among those seized, they would be restored, of course. But Walker & Co. mixed the whole thirty-seven barrels together in the process of rectifying, and, after rebarreling and selling a portion of the compound, the twenty-two barrels seized remain, so that it is now impossible to identify any of the spirits which were not distilled by William E. Reed. It is possible, and perhaps probable, that five thirty-seventh parts of the twenty-two barrels, or about three barrels in quantity, were not distilled by him. But it cannot be alleged, with absolute certainty, that any part of the five barrels remain. All that can be said is, that it is probable. And if any part of them remain, it is, of course, impossible to separate that part from the rest. If, then, I restore to Walker & Co. three barrels, those barrels will contain some whiskey which has been forfeited, and therefore belongs to the United States. I have no right thus to dispose of the property of the United States. I have no right to make an equitable division between them and the claimants. I am obliged to give to the United States all the spirits which are shown to be theirs. If the claimants, by mixing their own whiskey with that of the United States, have rendered it impossible to identify theirs, they must suffer the consequences of their own act. They made the mixture, it is true, in perfectly good faith, in the regular exercise of their trade and business, and believing that the whole of the whiskey belonged to them; still, by their act they have put it out of their power to give to the United States only what belongs to them. They are obliged, by force of a well known rule of law, to surrender to the plaintiffs all that belongs to them; although in so doing they may be obliged to give up some that belongs to themselves. If one intermixes his goods with those of another, without his knowledge or consent, so that they cannot be identified, the law does not allow him any remedy; but gives the entire property, without any account, to him whose original dominion or property is invaded. 2 Bl. Comm. 405. The order of condemnation must, therefore, include the whole of the thirty-two barrels. Nor does this decision work in this case any real hardship. The United States are actually entitled to thirty-two barrels of the whiskey purchased by Walker & Co. They claim in this suit only twenty-one, leaving with Walker & Co. ten, or the proceeds of ten, which are not claimed, and may never be claimed.

In concluding this opinion, I adopt what

·the supreme court of the United States said in announcing their decision in a similar case: "It is true that cases of hardship and even absurdity may be supposed to grow out of this decision; but, on the other hand, if, by a sale, it is put in the power of an offender to purge a forfeiture, a state of things not less absurd will certainly result from it. When hardships shall arise, provision is made by law for affording relief under authority much more competent to decide on such cases than this court ever can be. In the eternal struggle that exists between the avarice, enterprise, and combination of individuals on the one hand, and the power charged with the administration of the law on the other, severe laws are rendered necessary to enable the executive to carry into effect the measures of policy adopted by the legislature."

Decree accordingly.